By the Court,
Beardsley, J.
An alien, in time of peace, and still more in time of war, is subject to various disabilities. He is ineligible to office, and in public elections has no suffrage. As against the state, he cannot, without its express assent, hold title to real property, and, as his blood is without “ heritable quality,” he can neither take nor transmit any right or title by descent. Naturalization removes these disabilities, and invests the recipient with most of the rights of a native born citizen. Citizenship is therefore in every point of view a most important and valuable right. And to this right, ennobling and valu *138 able as it is, conferring upon the possessor high political as well as civil privileges, every free white alien is entitled, on complying with the prescribed terms and conditions.
As the law now is, this right is only to be acquired by making application to a court of competent jurisdiction, supported by sufficient legal proof, and obtaining the judgment of the court thereon.
1. There must be an application for admission to the right of citizenship made in due form to one of the courts indicated in the acts of congress on the subject. (Act of April 14th, 1802, §§ 1, 3, 3 Laws U. S. 475; Act of March 22d, 1816, ch. 32, § 2, 6 Laws U. S. 23; Act of May 24th, 1828, ch. 106, § 2, 8 Laws U. S. 132.)
2. The application must be supported by legal proof of the facts on which it rests. The proceedings are strictly judicial. The alien who applies for admission asserts a compliance on his part with the prescribed conditions, and he must furnish the requisite proof of what he so alleges, or he establishes no right.
The act of April 14th, 1802, already referred to, declares that the court “shall be satisfied,: of the residence of the applicant, for the proper period; and that “it shall further appear to their satisfaction, that, during that time, he has behaved as a man of good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same.” Then foliows a proviso “ that the oath of the applicant shall, in no case, be allowed to prove his residence.” (3 Laws U. S. 476, § 1, subd. 3, 4.)
This act does not in terms declare in what manner the court shall become satisfied of the residence of the applicant, and of his good moral character and correct principles, but it leaves no room for doubt on the subject.' As between parties litigant, their admissions and agreement may satisfy a court of the existence or non-existence of material facts : but in applications for naturalization there are no hostile parties who can adjust or establish any thing by way of stipulation. The court cannot take the mere statement of any person unsupported by an oath. Sucha course would be unprecedented in a court of justice; *139 and beyond all question, upon the terms of this act alone, th.e court would be bound to require legal evidence to establish all the facts upon which the judgment is finally to be rendered.
The proviso declares that the oath of the applicant shall not be allowed to prove his residence. From this it is to be inferred that itie residence is to be proved; and to be proved by the oath of some one other than the applicant himself.(a)
I grant it may also be inferred from the language of the proviso that the oath of the applicant is allowable to prove his good moral character and correct principles. It is a negative provision, pregnant with an affirmative : it prohibits the allowance of his oath to prove residence, and impliedly affirms that it may be received for other purposes required by the section. And, in my opinion, the applicant’s oath may be received for these purposes, although upon such facts as the general moral conduct of a party, and the rectitude of his principles, which are commonly susceptible of proof by witnesses, I should hold that it was but reasonable to require some evidence beyond his oath.
The oath of a party is never to be taken as evidence in his own favor upon which a court is finally to adjudicate, except where it is made so by statute. It seems to me the act of congress has, to a limited extent, given such effect to the oath of an applicant for naturalization. But as to residence, the oath of the party cannot be taken, and this fact must be established to the satisfaction of the court in some other manner. This is not to be effected by an inspection of the party, nor by the mere declaration of bystanders; but must be proved by judicial testimony.
Undoubtedly the legislature may make ex parte affidavits competent evidence in any case, as they have done in various instances, by express enactment. But this only proves that, without such enactments, affidavits are inadmissible, and can never be received. I have no difficulty in holding that affidavits cannot be received or read as evidence in any case *140 upon which a court is to render a final judgment, unless the legislature have declared, in very unequivocal terms, that such shall he their effect. If the present question, therefore, depended exclusively upon the act of 1802, affidavits ought not to be received as evidence.
But in 1816 “an act relative to evidence in cases of naturalization ” was passed, which provides that the fact of residence is to “ be proved by the oath or affirmation of citizens of the United States, which citizens shall be named in the record as witnesses and when so “ satisfactorily proved,” the place or places where the applicant has resided must be stated in the record, with the names of the witnesses. (Act of 22d March, 1816, § 2, 6 Laws U. S. 23.) To the like effect is the act of May 24th, 1828. (8 Laws U. S. 132.)
These acts, in most respects, are declaratory of the previous law, as the residence must before have been proved by the oath of witnesses or a witness ; or, in other words, must be proved by legal testimony. But by these acts there must be witnesses ; one alone is not enough : and they must be citizens ; not aliens, as they might have been under the act of 1802.
I entertain no doubt, therefore, that affidavits cannot he legally received in these cases, and that no court should ever read them, or hear them read, as evidence to prove the right of citizenship.
Certain things are to be done in open court; (Act of April 14th, 1802, § 1, sub. 2, 4;) and of these the court has judicial notice. But in respect to other matters, as residence, good morals, and sound principles, they must be proved. I have supposed the oath of the applicant allowable as evidence for some of these purposes, but that ex parte affidavits cannot be received for any purpose.
What has been suggested is of course not to be understood as excluding such documentary evidence as is allowed by law. (Act of April 14th, 1802, § 1, sub. 1, 2; and see the act of March 22d, 1816, ch. 32, § 1; also the act of May 24th, 1828, ch. 106, § 1.) This description of evidence is received on peculiar grpunds.
*141 3. The right of citizenship is finally conferred by the judgment of the court. This judgment can only be rendered when the court has become satisfied that all the conditions of naturalization have been complied with. By the first section of the act of April 14th, 1802, aliens are to be admitted as citizens on the conditions specified, !£ and not otherwise.” The court therefore must, in the language of1 the act, be11 satisfied” that all these conditions have been complied with ; that the "residence of the applicant, and his behaviour, have been such as the law requires; and that his attachment to our form of government is firm and sincere. These are imperative duties resting upon the court, which cannot be evaded or overlooked. Judgment cannot in these cases pass by default, or as a matter of course. There is no one to be defaulted, and the judgment of the court should be the result of an honest conviction, wrought in the mind- by the evidence given, and the declarations of the applicant. If the applicant thus establishes his case, he has proved a right to which he is entitled; but if he fails to establish the requisite facts, he has no honest claim to a judgment in his favor.

 As to the meaning of the word proof see Brown v. Hinchman, (9 Johns. Rep, 75;) Lenox v. The United Ins. Co. (3 Johns. Cas. 224.)